Case No. 22-7163, District of Columbia v. Exxon Mobil Corporation, et al., at balance. Mr. John McGowan for the balance, Mr. Tritaat for the appellate. Good morning, Council. Good morning. Thank you, Your Honors, and may it please the Court. In this case, like dozens of others around the country, state or local government seeks to impose liability on energy providers for injuries allegedly caused by global climate change. This appeal presents the question of whether the case belongs in federal or state court. Federal jurisdiction exists over the District's claims for multiple reasons. To begin with, the District's claims are governed by federal common law. However, the District seeks to frame its theories of liability. It is seeking relief for injuries allegedly caused by global climate change, and its theory of causation of those injuries depends on worldwide greenhouse gas emissions. As the Second Circuit recently held in the City of New York, where a party seeks to hold fossil fuel producers liable for climate change-related harms, federal common law necessarily governs those claims. You say federal common law governs, but it's been displaced by the Clean Air Act, which you don't even invoke. So if it has been displaced by the Clean Air Act, and it will not surprise you to learn that that is our underlying position here, that is a merits question. It doesn't go to the question of jurisdiction. On the question of jurisdiction, Judge Katsas, our fundamental submission is that federal law governs here really for the reasons that the Supreme Court has set out in a series of cases culminating with AEP. Where you have the complete preemption doctrine, which is on the outer bounds of well-pleaded complaint rule. And you have federal common law, which is on the outer bounds of our authority. And there's a federal statute, which occupies this field, and it either completely preempts or it doesn't. And they're asking us to ignore the federal statute and create an exception to the well-pleaded complaint rule, just based on policy judgments in the air. So there's a lot in that question, Judge Katsas, and let me address each of those premises in turn. So first, I would certainly recognize that we are not invoking the doctrine of complete preemption here, and that's the simple reason that here we're not arguing that it is a federal statute that does the jurisdictional work. We are arguing that it is federal common law that does the jurisdictional work. But as the Wright and Miller Treatise and other sources have indicated, it would be anomalous to treat a situation where federal common law supplies the rule of decision differently from a situation in which a federal statute does so. Where is here federal common law supplies the rule of decision? The claim arises under federal common law. And then the sole question that I think that remains is whether or not removal is appropriate in this circumstance. So I think the Supreme Court has made clear in the Oneida Indian Nation case, in the National Farmers Union case, among others, that where federal common law supplies the rule of decision, the claim arises under federal law. Maybe so, but you're asking us to assess the relationship between state law and federal law without reference to the federal statute that is central to all of this. I think I just, I don't see how, I don't see how we can do this. You might or might not be right that federal common law would have governed under Milwaukee 1 without the Clean Air Act, but we have the Clean Air Act. I think that that is a merits question. In other words, once this court concludes that the claim at issue arises under federal law, then the question of whether a federal statute displaces that claim is a merits issue that would be resolved presumably on a motion to dismiss. So in other words, Judge Katsas, I think the way that we think that this would work is that if this court agrees with us that this case is subject to the rule of Milwaukee 1 AEP and the other cases on which we rely, the court should then conclude that there is federal jurisdiction. And at that point, the question would become, do the plaintiffs have a valid cause of action? And one reason why they would not is if the cause of action is displaced by the Clean Air Act. And I think that the Supreme Court has made clear in the Oneida Indian Nation case, Standard Oil and others, that that is how the analysis should work. In other words, the jurisdictional question is discreet from the merits question of whether or not there is a valid cause of action. But the jurisdictional analysis here is complete preemption. I think it is analogous in some respects to complete preemption. We are, again, not invoking the complete preemption doctrine because we're not relying on... You need more than a preemption defense. Correct. But I think the reason... You need preemption plus. So let me explain why I think we have more than a preemption defense, which was another part of your original question. Right. I think that the reason we have more than a preemption defense is that you've got to look at what federal common law is doing here. And I really do think that this is an area in which federal common law is not merely operating as a defense. It is actually supplying the rule of decision. And I think we know that from how the Supreme Court has described the operation of federal common law in this context. If you look at cases like Milwaukee 2, federal common law exists. It is because state law cannot be used. Milwaukee 1, there is an overriding federal interest in the need for a uniform rule of decision. And why I think this is critical is because not just to how federal common law operates here, it goes specifically to the issue of the well pleaded complaint rule. I want to address that as well directly. I'm sorry, I'm having trouble getting past why you can rely on federal common law if it's been displaced by the Clean Air Act. I think, Judge Pan, for the simple reason that this is an area in which, again, federal law supplies the rule of decision. And that is because, ultimately, we think that it would be inappropriate for a state to project its policy preferences onto other states. But the federal law is the Clean Air Act, and you're not invoking it. Well, it may very well be that the Clean Air Act displaces the cause of action. In other words, I think that the two steps of the analysis are the two steps contemplated by the Supreme Court when the Supreme Court has said that the question of whether there's a valid cause of action is discrete. Displacement operates kind of analogously to preemption in the sense that when you're operating in an area in which federal law governs, then if there's a federal statute that comes in and displaces any cause of action. I understand that's your argument, but I can't get past step one when you're saying federal law governs. The federal law in play here is the Clean Air Act, and you're not invoking it. I don't see why you can invoke federal common law that's been displaced. I'm having trouble with that analytical framework. Well, let me do my best to help, Judge Pan. I think that I would actually point to the Second Circuit's decision in City of New York, which while a case that arose in federal court and therefore does not present the additional wrinkle of how the well-pleaded complaint rule applies, I think really does instruct on how this analysis works. So that was obviously a case in which the plaintiff, the City of New York, sought to proceed under state law. And the Second Circuit, in Judge Sullivan's opinion, said first, no, this is an area in which federal common law supplies the rule of decision. But then second, the federal common law cause of action is displaced, and that's why dismissal is appropriate. So we're really relying on the first part of that analysis for purposes of the jurisdictional question here. In other words, this is an area in which state law cannot supply the rule of decision. That's why federal jurisdiction lies here. Are there any cases in which federal common law provides the grounds for removal, and then that federal common law is found to be completely preempted by a statute? So I mean, that's part of the problem here, right? You're relying on federal common law to get into federal court. And as you've said, your view is that the Clean Air Act, in fact, preempts federal common law. So how do we square those things? Sure. So I think what I would say, Judge Rao, on that specific aspect of all of this is that I don't think there's anything odd about the notion that there might be federal jurisdiction, but no federal cause of action. And I would actually point to the Supreme Court's decision in Standard Oil for that proposition, because that was a case in which the court said this is an area in which federal common law applies. We're actually not going to recognize a federal common law cause of action. We don't think that the federal interest justifies there being a cause of action. And again, that's no different. That's a little bit different, though, from the federal common law being entirely preempted by a statute. Well, but I think what I would say is that we're not arguing that federal common law is being completely preempted in the sense of the doctrine of complete preemption, which is, of course, an alternative way of getting into federal court. What we're saying is that once you have federal jurisdiction, that any cause of action, if in fact there is a federal common law cause of action, would be displaced by the federal statute, which provides that there is no remedy. And again, I think that the Supreme Court has recognized that those are two discrete steps. But I do want to add one further thing to our argument, which I think is an important premise of our argument. And that is that it seems as if the district is setting great store by the well pleaded complaint rule here. And I think that the well pleaded complaint rule doesn't help the district for the simple reason that, as Judge Strauss indicated in his concurring opinion in the Minnesota case in the Eighth Circuit, this is simply another form of artful pleading. A plaintiff cannot avoid the application of a federal rule of decision where that federal rule of decision provides the exclusive rule of decision simply by pleading a claim under state law. It would be no different from a circumstance in which a plaintiff on a matter of choice of law pleads the wrong state's law. I think under those circumstances, a court looks to the substance of the claims. And I think what's really critical... So if you could address that then, because the D.C. Consumer Procedures Protection Act, and it's about making misstatements or misleading statements about global warming, where is the federal question or the federal law that's necessary to be applied there? I think the critical point here, Judge Pan, is that these are claims seeking relief for injuries allegedly caused by global climate change. And in our view, that is... And that's an important difference, isn't it? Well, I think that this might be a different case if what the district was seeking were more limited remedies, the more traditional sorts of remedies that are provided on consumer protection claims. But I want to point the court to the critical parts of the complaint made clear that what the district is seeking here is something much different. If you take a look at the complaint at pages 122 to 123 of the district, heat waves, rising sea levels, flooding, and the like. And then the district seeks very open-ended relief in the form of damages, restitution, and the like. And the district has never at any stage of this litigation disavowed an intent to seek damages for physical injuries and property damage resulting from the effects of climate change. Indeed, even... I didn't read the complaint that way. I thought, I think there might be a proof issue here, that they were saying that D.C. consumers relied upon these misstatements and made purchases of, I guess, oil and gas products that they otherwise would not have. And I think it's a question for the district as to how you would calculate these damages. But I guess the fact that they spent more money on these products than they otherwise would have, that was what I understood the damages to be. Well, I think it's a question for my friend, Mr. Fatak, as to whether or not that is all the So if the district were seeking to recover, you know, only the money that consumers paid for fossil fuel products they would not have paid in the absence of the alleged misrepresentations, that might be one thing. But we read the complaint and even the district's brief before this court to be seeking something far more ambitious. Page 17 of their brief, the relief sought is to remedy local harms caused by defendants' deceptive advertising. I think that has to be understood in terms of the allegations in the complaint that I just cited, where the district seems to be seeking relief for the effects of climate change. No, from the advertising, that's different. Well, but again, in terms of what the damages are, I think that the district is seeking to recover damages for the climate-related harms to the district. And this is a question that the court will have ample opportunity to ask my friend on the other side to really clarify what they're calculating. Does your claim then rest upon them asking for damages for climate change? If that's not what they're asking for, do you lose? I think it would be a much harder case. And I want to give something of an it depends answer to this, because we have not heard any limitation yet on the damages that they are seeking. I think if the damages are effectively damages that seek to alter the production of fossil fuels, then there might still be an argument that federal common law applies. But our submission, as we read this complaint, is a much more straightforward one. It is that what the district is doing is seeking damages for injuries allegedly caused by global climate change. And that implicates all of the considerations that underlay the Supreme Court's decisions culminating in AEP. I'm just wondering what happens to your argument if it turns out that your assumption that they're asking for damages for global climate change is wrong. What happens to your arguments then? I mean, I think that the district is dancing on the head of a pin here when it says that the relief it is seeking is to remedy. Think of this as a hypothetical, hypothetically, then say they're not asking for that. That's not what they're asking for at all. What happens to your argument? I think it's a harder argument, because I think we would be left with the argument that the relief that is being sought is effectively relief that is seeking to seek recovery for injuries caused by climate change. So your arguments do hinge on that. So whether it's explicit or implicit, your arguments rely on the notion that the district is asking for damages for global climate change. What I would say, Judge Pan, is that I think that the fact that they're seeking these broader damages is what illustrates that this is not really a paradigmatic consumer protection claim. And the district, I think, is not shy about this in the complaint. If you look at the very first page of the complaint, on page 80, the district says the deceptive marketing enabled the unabated and expanded extraction, production, promotion, marketing, and sale of defendants' fossil fuel products. So I would submit that when you look at the claim as a whole, which is what a court is supposed to do when applying the well-cleaned complaint rule, this is not really a claim that is narrowly targeted to marketing. This is a claim that really focuses on global greenhouse gas emissions. And what I think makes that so unusual is that the relief that is being sought inevitably has to flow through global greenhouse gas emissions, which involve fossil fuels produced not just by these defendants, but of course by companies worldwide decisions to use fossil fuels. And while even if the district said we're only recovering for the effects of climate change in the district, all of this is intermediated through global greenhouse gas emissions worldwide. That's what makes this different. You may or may not be right about what they're asking for, but all of this line of inquiry about remedies just seems like an argument not for removing or not any dispositive motion, it's just for narrowing the scope of the relief they can seek. I mean, when you look at the prayer for relief at 156, it can easily be construed as asking for statutory remedies and join the defendants from violating the statute. And there's a site to a provision, which I assume affords injunctive relief. I mean, they can do that, right? There's no preemption or complete preemption of a just a narrow fraud claim to not misrepresent. I think that we have understandably, I think, focus on the monetary relief that's being sought. I think even with regard to the injunctive relief, damage, or suppose their damages theory is, you know, the amount that environmentally conscious DC consumers, the extra gas they wouldn't have bought had they known about climate change. I think that that would be analytically, arguably different for the reasons that I suggested to Judge Tan. And I think with regard to the injunctive relief, Judge Tan, sorry, I will just say, I'm interrupting you. Go ahead. Well, that's your prerogative, not mine. I think with regard to the injunctive relief, what I would say is if they were seeking injunctive relief, it seeks to prohibit only the making of misleading statements or omissions. Again, analogously, that would be limited. Here, the injunctive relief is injunctive relief prohibiting defendants from violating the CPPA. That may be the same. It may be broader. It's unclear. And I think that that ambiguity is studied here because I do think that the district, if it's able to proceed in wants to retain the ability to seek much more ambitious remedies. And so I think at a minimum, that clarification is potentially important to the analysis. But I think that our fundamental submission here is that if we are correct, that the relief that is being sought is broader. That implicates all of the rationales for the application of federal common law in this context. It is a state, or in this case, the district seeking to project its policy preferences onto other states in violation of the constitutional scheme. I would just add one point in response to Judge Rao's earlier question, which is I think that that's why it's not odd to look at the application of federal common law, even if it turns out that there's no federal common law cause of action. I would grant that I think some of the other circuits that have considered this issue have really struggled with that. But I think that the reason why it's appropriate to look to federal common law is precisely because there is an underlying constitutional principle here that explains why federal law should apply. And we obviously cite, you know, a number of cases that essentially rely on the underlying principle of equal footing to explain why it is that in the context of interstate pollution in particular, it would be inappropriate for a state other than the point source state to project its policy preferences to conduct that takes place outside the state's board. Mr. Shanmugi, can we talk a little bit about removal jurisdiction under Grable? Sure. So under Grable, the state law claim must necessarily turn on federal law. And so if that is going to be the hook for removal jurisdiction, what specifically is the federal law that the state law claim here arises? Sure. So I would say three things, Judge Rial. First, that we obviously resist the proposition that complete preemption or Grable are the only ways of getting into federal court. That's what we've obviously been discussing over the last 15 minutes. Second, we would submit that the easiest way to conclude that there is jurisdiction under Grable is if the court agrees with us that federal common law applies in this context. Because if a claim implicates federal common law, we would submit that it necessarily raises substantial questions of federal law because each of the elements of the claim. So assuming the panel is skeptical about your federal common law argument, what other federal law is there? Because the briefing is very murky on this sort of gestures at regulations and federal policies. Yeah. So I would say, I promised I was going to say one more thing, but I'm actually going to say two. I would say first that we don't think that it is necessary for Grable jurisdiction that an essential element of the claim be an element of federal law. And we've recited a number of cases that post-date Grable in the lower courts for that proposition. I think what we would say is that the claims here arise under federal law because they necessarily implicate the actions taken by federal officers in setting the balance between energy production and environmental protection. That the claims would ask this court to second guess those judgments and really to use district law to attack policy judgments made by the federal government, both in the domestic sphere and international. And that I would also submit as a reason why the application of federal common law follows a fortiori from the cases that involve mere interstate pollution. So does that argument then also turn on the scope of remedies that DC is seeking? You know, to the extent that they're seeking certain remedies, there is an interference with the decisions of federal actors. I think it's certainly true that the more ambitious the remedies and in particular to the extent that the remedies trench upon policy judgments made concerning the balance that inevitably is struck again between energy production and environmental protection. Sure. That is relevant to the analysis. I would submit that it is also relevant to the which we rely both federal officer removal and oxler removal. I think that to the extent that Judge Kelly rejected those arguments, it was because he took in our view a narrow view of the claims and he focused once again solely on the fact that these were claims that were targeted at the misrepresentation and not at the broader context of the claims and the relief that is being sought. I think with regard to both federal officer removal and oxler removal, those are both types of removal that require only a very broad nexus between the federal activity or the activity on the Outer Continental Shelf and the claims at issue. And so I think that it was only through taking this narrow view of the claims themselves that Judge Kelly could conclude that the nexus requirements were not satisfied. Mr. Chamigan, let me ask you a question and there's some allusion to this in your briefing, but I'm wondering if it matters for the purpose of thinking about whether federal common law applies here, that the District of Columbia is not a state. I think it does sort of place an additional thumb on the scale for the reason that we set out in our brief. The District's authority is authority given by Congress to promulgate local laws. Obviously, the CPPA is an example of that. And so I think in some sense, this is really analogous to the states, not by states, but by localities. And to the extent that what is really going on in the underlying litigation more broadly here is a set of states making one set of policy judgments, other states, as reflected by the amici here, making other policy judgments. It seems a fortiori that where you have the district operating in a local lawmaking capacity and some states on the other side that have different policy judgments, that that really does implicate the underlying concern that triggered the application of federal common law in the first place, which is a real concern about states opposing other states with policy judgments about something of an interstate quality. That is what triggers the application of federal law. These cases arose in the context of the Supreme Court's original jurisdiction, but the Court has made clear in AEP that the same considerations apply even whereas here the defendants are private parties. Another problem I have with the federal common law analysis is, you know, you're sort of going back to Milwaukee one and taking the Clean Air Act out of this, right? If we were just starting from scratch with all extant law and trying to figure out whether the plaintiffs can state the federal claim that you're necessarily, you're saying they're necessarily stating, right? We would start with the federal statute. We would look at the federal statute. We would say we don't do implied rights of action anymore, and that would be the end of it, right? No private right of action under the Clean Air Act, which balances the competing state and federal interests and provides the backdrop for any analysis of how those interests shake out in a case. And you're just sort of pretending it doesn't exist, and, you know, in a world where we no longer create private rights of action when we have a statute that frames the federal interests pretty clearly, you know, you're asking us to create the private right of action just based on policies in the air. So, Judge Katz says again, I think that this ultimately comes down to the one-step versus two-step issue that we discussed earlier, and I think that the Supreme Court really has made... Sorry, remind me the two-step. So, that there is a sort of jurisdictional component and a merits component to what we are discussing. And I think what you just said really, in our view, goes to the merits component. In other words, if we were successful on the jurisdictional argument, and we were back here two years from now on an appeal from the granting of a motion to dismiss, I think what I would say to you is precisely that, that we have displacement here because the Clean Air Act provides for no private cause of action. But I would point to the cases that we cite at page 30 of our opening brief, Oneida Indian Nation and Standard Oil, which make clear, in the words of the Supreme Court in Oneida Indian Nation, that a claim governed by federal common law arises under federal law for jurisdictional purposes, quote, even if that claim, quote, may fail at a later stage for a variety of reasons. Now, I recognize that there is a sense in which, as an intuitive matter, it may seem odd to sort of think about whether federal common law applies if there is no federal common law remedy. But again, that's exactly what the Supreme Court did in the Standard Oil case. It didn't even get to displacement. It just said, we, the Supreme Court, exercising our federal common lawmaking authority, are not going to recognize the cause of action. Can I ask you, there's a quote in American Electric Power where the court says, in light of our holding that the Clean Air Act displaces federal common law, the availability of a state lawsuit depends, inter alia, on the preemptive effect of the federal act. Doesn't that mean that we are back to the preemptive effect of federal act? Because we're talking about jurisdiction here. I don't think so, Judge Ann, because I think that what that sentence is contemplating is a state applying its own law where you have a point source, for instance, within the state. And that is a context in which the state has power to regulate, to apply state law, going back to the Supreme Court's decision in Willett, among others. And I think that that is correct, which is to say it's referring to a situation in which the state retains the authority to regulate. The last thing I would say in response to Judge Katz's last question, which I think is related to this, is that one anomaly of adopting the district's approach here is that it would really leave state courts, or in this case district courts, the superior court, in the power of determining the content of federal common law. And, of course, ordinarily, that is the province of a federal court to determine. And, you know, I would come back to the proposition that, you know, this is an area in which the Supreme Court has made clear that federal common law is not simply operating as a defense, that it supplies the rule of decision. Let me try it one more way, which is, I take your point, we have to be careful about distinguishing jurisdictional questions from merits ones, right? But when we're doing the jurisdictional analysis, I'm thinking of it as complete preemption, but you're thinking of it as you need to establish that there is a federal rule of, a federal common law rule of decision, right? In order to do that, you have to compare, you have to do a conflict analysis comparing the operation of the state cause of action or state law rule against federal interests. You have to find some substantial impairment of federal interests. So, if you can do that by reference to federal interests in the air, ala Milwaukee one, at the jurisdictional stage, it seems very weird to say, but, you know, once you consider a statute that occupies the field and balances all of this stuff that you have to ignore the statute when doing that, you know, conflict analysis as relevant to jurisdiction. So, let me try perhaps a slightly different way of framing this that hopefully helps to capture what I think is the intuitive reason why this is the right way to think about this. I think the right way to think about this is to sort of start from the proposition, is this an area in which state law or federal law supplies the rule of decision? And the merits question then becomes, what is the content of federal law? So, in other words, to the extent that we think that there is a constitutional underpinning in this context, as perhaps there is in other contexts in which federal common law applies, because of the fact that in the context of interstate pollution, where a state, other than the point source state, is trying to apply its law, it really is projecting its law beyond its boundaries. Then I think the right way to think about this is it doesn't matter whether or not federal common law supplies a rule of decision. It doesn't matter whether it's displaced. If it is displaced, state law doesn't somehow come back to life for jurisdictional purposes. This is an area in which federal law necessarily exclusively supplies the rule of decision. And then the is what the Supreme Court was capturing in the One-Eyed Indian Nation case, in Standard Oil, cases that arise in other federal common law-making contexts. So, your federal common law argument also relies on framing this case as one about global warming writ large. If it is framed as a case about consumer protection and the DCCPPA, then there's no federal common law. Yes, but I would say that I don't think that it's dispositive to that, as in any case involving an analysis under the well-pleaded complaint rule, what source of law the district invokes. In other words, I don't think that it is sufficient for the district to say, we're bringing this case under the CPPPA, any more than it would be sufficient if I got into a car accident with Mr. Fatah in the district to invoke Kansas law. No, I understand. So, you're saying that just because they invoke it doesn't make it so. But if we agree that this is a Consumer Protection Act case, and not a case that challenges global warming writ large, then you have no federal common law argument. At a minimum, that would require a limitation to traditional remedies. And I think this complaint belies the entire discussion that I cited at pages 122 to 123. Again, that's something we need to ask the district about, what their remedies are. But the bottom line is, your entire argument rests upon interpreting this complaint and this warming writ large. We're certainly not arguing, Judge Pan, that my clients or any other similarly situated defendants should somehow be categorically immune from traditional causes of action based on misrepresentations. What makes this different is that the district is seeking relief, effectively and I think explicitly, these climate-related harms. And the fact that the district, even in response to this precise argument, has not disclaimed that relief makes me pretty skeptical that the district is going to do it today at oral argument. Suppose they were only seeking narrow remedies. Are you making a separate argument that the difference between a fraud claim targeting the advertising versus nuisance claim targeting the production of fossil fuels, does that matter? I mean, I'm sort of thinking in the tobacco context, there's an express preemption provision in the Labeling Act, which covers all sorts of failure to warn and other claims. The Supreme Court said affirmative misrepresentation claims are different. It's just targeting something different, the duty not to deceive. Is there that, what, how much of a difference does the fraud versus production of fossil fuels? Judge Katz says I think when you look at these lawsuits nationwide, the lawsuits that have been the subject of the decisions of other circuits, some of the earlier filed lawsuits in particular really did pursue nuisance. Much more clearly. This one seems designed to look and walk and smell like a fraud claim. I think that that is true. And I think that that is no accident because these cases, many of which are being brought by the same lawyers, I think are being moved to this earlier stage in the causal chain, precisely in an effort to avoid the force of the analogy to interstate pollution. What I would say in response to that is precisely what the Second Circuit said in the city of New York case, where although the claims were pleaded as nuisance claims, the lawyers were attempting to say, well, these are really claims that relate to the misrepresentation. And what the Second Circuit said is that you can't back up to an earlier stage in the causal chain because that's just another form of artful pleading. An artful pleading, quote, cannot transform the city's over global greenhouse gas emission. And we would submit that that is precisely what is going on here. And even in the characterization of the claim itself, again, the claim itself is being described as a claim where the deceptive marketing enabled the unabated and expanded extraction, production, promotion, marketing, and sale of dependent fossil fuel products to the detriment of D.C. consumers and the public general, which I think underscores that the relief that is being sought here is indeed the broader relief, which we alluded. Mr. Shanigan, for artful pleading, do you have to have complete preemption, though, for the artful pleading doctrine to apply? I mean, there's certainly some implication in the Supreme Court's cases that suggests perhaps that's the only thing, the only way in which we can find artful pleading. I don't think so, Judge Rao. I'm certainly aware of the references. So what's the residual category of things? Well, I think what I would say is that I just don't think that artful pleading and complete preemption should be equated. And to the extent that the Supreme Court in places has referred to complete preemption and the grable doctrine as cases in which you look past the fact that a claim is pleaded under state law, I don't think that the Supreme Court has ever indicated that those categories are exclusive. And again, I could do no better. Have they ever recognized something beyond those categories? No. And I would recognize that that's the one place in which I can't point to a Supreme Court case that helps us. And I think, for instance, that Judge Strauss felt that his hands were tied by the fact that the Supreme Court had not explicitly recognized that. But I would say that as a matter of first principles, there's no reason to treat a situation where a federal common law applies differently from a situation in which a federal statute applies. And I could do no better than to cite what Wright Miller says about this when it should turn on whether the claim arose under a federal statute or under federal common law. That section, though, is not about this issue, I believe. It is not about the specific issue of removal. But on that, I would rely on the Supreme Court cases that say that when a claim is governed by federal common law, it arises under federal law. Then I think the sole additional step is, well, is removal appropriate, notwithstanding a well-pleaded complaint rule. On that, I'm content to rely on the decisions of other circuits, in other contexts, to be sure, but the decisions of other circuits that have permitted removal of claims where federal common law supplies the rule of decision. That's the open question that maybe one day the Supreme Court will have to resolve. I would grant that I don't have a Supreme Court case to point you to, or else we wouldn't be here this morning. But I do think that that is ultimately consistent with the Supreme Court has set out, and in particular, the principle that the jurisdictional question and the merits question are discrete. Thank you, Mr. Shim. Again, we'll give you a rebuttal. Good morning. Is it a talk? A talk, yes. Whenever you're ready. Thank you, Judge Patsos, and may it please the Court. Ashwin Patek for the District of Columbia. Let me start with the discussion that my friend had with Judge Tan just now, which is that I can say clearly here that the District is not seeking damages for the physical effects of climate change in the District. I think we've made that clear repeatedly. I point the Court, first of all, to the complaint itself. At the end of the complaint, all they really point to is that we say that we may seek, as we can under the CPPA, restitution or damages. But then when you turn to our remand motion in the District Court, we specifically stated that the complaint refers to various harms that will result from the climate crisis, not because they are the target of the District's relief, but to illustrate one reason why the defendant's misrepresentations and omissions were and are material to consumers. I think that explains the passages from the complaint that my friend referenced, JA 122 to 123. He suggested that there was no reason we could have included information about the effects of climate change in the District other than because we're seeking damages for those effects. But the very reason that we're including that information in our complaint is because we have to show materiality under the CPPA. We have to show that particular deceptive comments were material that a reasonable consumer would have wanted to know that information when they made a purchasing decision. And we think that the fact that their products cause global climate change and have effects in the District and around the world means that those particular statements would be material to a reasonable DC consumer. What damages are you seeking and how would you calculate those damages and restitution, which is something that you say you're seeking? So that obviously would be our burden in this case in discovery or when this case goes to trial. And the type of damages we would seek would be quintessential CPPA-type damages. So if we can show that certain consumers wouldn't have purchased their products had they known the information that we say they omitted or misled consumers about, then we could try to prove damages for restitution to consumers. We may also be able to show damages as a result of the fact that we have had to engage in education campaigns to counter the deceptive communications that they've engaged in. And perhaps, and again, we would have to prove this and that would be our right. And we may choose not to try to prove some of this, but we could try to show that competitors to them, clean energy competitors, might have had an advantage had they not engaged in their deceptive statement. So I think there are some types of damages and restitution that we might be able to prove at trial, but that is not the focus of our claim. The focus of our claim is penalties and injunctive relief. Injunctive relief in the sense that they stop engaging in the deceptive and misleading statements that we think that they've been engaging in for decades here, despite knowing that climate change is real and is affecting everyone, and despite taking actions themselves to respond to climate change. They've raised the height of their platforms. They've explored in the Arctic now that the ice is melting up there. So they've taken those actions while at the same time engaging in a decades-long deceptive plan to try to change consumer behavior, in our view. And we have to prove that, obviously. We have to prove that at trial. Now, Mr. Patrakis, do you see those seeking, will they plan to seek damages? A lot of the complaint talks about the fact that there has been an overuse of fossil fuels because of these overuse of fossil fuels. I mean, the overuse of fossil fuels instead of alternatives, isn't the idea that that overuse has contributed to global climate change and caused damages within the District of Columbia? Well, we do think that that overuse has contributed to global climate change, but we will not seek damages for that. I can confirm that now to the extent it's helpful to this court. We are not seeking damages for the physical effects of climate change that the district is seeking damages for? No, no. Emotional or aesthetic, or I mean, I don't know what the other damages might be. I understand that. No, the answer is no, Judge Rao. However, to the extent that consumers made a different purchasing decision as a result of the deceptive comments, we could seek damages for that, right? That would be sort of quintessential restitution under the CPPA. We would obviously have to prove that. That burden would be on us. And whether or not we can prove that will depend on what we discover during discovery, what we can prove at trial. But no, we are not seeking damages for the effects of climate change. Now, I think my friend suggested that perhaps there would still be, that many of their concerns would still arise and they would still try to remove this claim despite it. And we obviously think that it doesn't make a difference either way, despite my statement today. Even if we were seeking those damages, I don't think there would be federal jurisdiction. And so I'm happy to begin with the complete preemption argument, which we just don't think applies here for three independent reasons. And so the first is simply that there is not a conflict here. They have not pointed to any federal common law cause of action that would stand in the place of the consumer deception claim that we have brought here. And I haven't seen that claim offered here today. And so that's the first reason. The second reason, which is an independent reason, is that federal common law just simply doesn't exist in this area anymore. And that's because the Supreme Court made this very clear in AEP. I think AEP was crystal clear on this point. I just point the court to some language from that decision. When Congress addresses a question previously governed by a decision rested on federal common law, the need for such an unusual exercise of lawmaking by federal courts disappears. It's off the books. And at another point, the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon dioxide emissions. We think it would be quite strange to say that an entire body of federal common law has been wiped off the books as a result of a congressional act, but then to hinge federal jurisdiction and removal authority on that particular area of federal common law. And I would just note that some of the same parties that are here today made the argument in the Kivalina decision in the Ninth Circuit that the Clean Air Act totally displaces federal common law. So in our view, really what's good for the goose is good for the gander. If you're saying that federal common law is simply not an avenue for relief in this area anymore, we really think that it cannot form the basis for federal jurisdiction. Rather, the Clean Air Act controls. So they are welcome to make, though they haven't made in this appeal, the arguments that the Clean Air Act completely preempts this area and therefore they can come to federal court or they can argue, and I'm sure that they will argue, in D.C. Superior Court and before the D.C. Court of Appeals that the Clean Air Act preempts, just ordinarily preempts these claims. They're welcome to make that argument. We obviously disagree with that and we will counter that argument. And if you go look at, you know, the D.C. Court of Appeals, if you plug in preemption into Westlaw, they routinely hear preemption claims, as many state courts do, and they're well-equipped to hear those claims. What do you make of the argument that ultimately persuaded the Second Circuit? I know you think it's not before us, but the argument that in any case about global warming, the extent to which production or statements or anything in the district is a causal driver, it's tiny. It just can't be. You need a uniform body of law, which has to be federal law, because no one state can address this. So, two responses to the City of New York decision. The first is directly to the point that you're raising. We think that the claims in this case versus that case are completely different. This is a pure state law consumer protection and deceptive comments case, whereas that case was a case raising sort of public nuisance, and it went directly to production and sales in particular of the product. So, we think there's really a big distinction there. Now, there's another wrinkle, obviously, with City of New York, which is that it was in a totally different procedural posture than this case. So, City of New York, I read to be an ordinary preemption case, not a complete preemption case, and certainly not a case that dealt with removal or federal jurisdiction, and the court explicitly distinguished all of the part of the opinion which addresses the statute, which your friends are not highlighting, reads like a preemption defense, Clean Air Act preempts. The first part of the opinion, it's a little circuitous, but there's a separate part of the opinion which says federal common laws, and the rationales are pretty similar. So, you just can't imagine a state law rule of decision addressing a worldwide phenomenon. I agree, Judge Katsas, and at the end of the day, I do find that first half of the opinion to be a little bit curious, and the second half of the opinion sort of in the same breath just immediately switches to saying that the Clean Air Act displaced federal common law. So, it's a bit odd why it is that the Second Circuit even addressed federal common law in an ordinary preemption case. I honestly read that first half to be a dicta in a way, because at the end of the day, the decision was based on the Clean Air Act, but that's the reason they couldn't bring those claims, because the Clean Air Act preempted the claims. So, I agree with you that there's something strange, I think, about the Second Circuit's agreements with it, but I think that case is distinguishable on many grounds. So, it is not the case that this court would somehow have to come into conflict with the Second Circuit on this point, and I'd also note that the Second Circuit has heard a case exactly like this addressing removal and federal jurisdiction that hasn't issued a decision yet, but it's that as a separate matter. And it's curious, but does it support Mr. Shanmugam in the sense, like, what they're saying is, whether you think of this as a preemption phenomenon or a complete preemption phenomenon, whatever it is, the rule of decision has to be federal. And that gets you preemption at a minimum. You say that's a defense, you need a substitute cause of action. It can't be state law because it's preempted. If there is a substitute cause of action, it has to be federal, and that sounds like at least a CF to complete preemption. And so, I mean, all roads lead to this not working because it's so obvious that state law can't operate in this area. I understand what you're saying, Judge Katza. So, obviously, you think there's a distinction in this case because this is a consumer deception. It's not a public decision. But putting that aside, I think there's still a lot of hurdles that they would need to get over. So, really, there are two avenues by which you can use the Federal Complaint Rule, and that is either grable or complete preemption. They sort of suggest, and I think this is what they're kind of relying on City of New York for, that there's some sort of third, nebulous way having to do with federal common law. And I just don't see that anywhere in the case law, there is no Supreme Court case that they can cite for this proposition. And I think it would be quite a leap to suggest that federal common law can serve, that that doesn't exist anymore because it's been displaced, can serve as a basis not only to preempt a state law claim, but to completely preempt a state law claim such that you can bring it into federal court. And I think that actually goes against a lot of the more recent decisions in the Supreme Court. The Supreme Court in the last sort of 20 years has tried to clean this area up, right? Justice Roberts refers to the Jackson Pollock painting that existed before grable. And so, you know, grable and gun, I think, really together try to tell federal courts, look, you are supposed to go through the grable analysis, that that's the ordinary way that you get around the well-pleaded complaint rule, which means that there has to be a necessary federal legal question raised on the face of the complaint that the plaintiffs are omitting to try to get into state court. And so, you know, it's really unclear what that is here. They suggest some policy ideas about global climate change and the national response to that crisis. But they don't suggest that there's any specific legal issue, even in federal common law, I might add. They suggest that there is federal common law. I mean, you know, the fact that the Supreme Court hasn't recognized this doesn't mean that the category conceptually would not exist. I think I mean, you know, arguing from first principles, maybe why would that category not exist? Why would it be limited only to complete preemption and and, you know, engrable? Well, because I think the court has stated that the complete preemption doctrine really is a doctrine about rational intent. I mean, it is a significant thing to say that a particular law totally erases an entire field of state law in all 50 states in the District of Columbia. Everywhere, everywhere. Right. But that's a very substantial thing to say. So typically, we would say Congress has to say that explicitly. There's another wrinkle, I think, as to federal common law. And I'd point the court to the Rodriguez, the FDIC decision on a unanimous decision by Justice Gorsuch from 2020, where Justice Gorsuch essentially said, look, federal common law is kind of is something that courts should shy away from. It's not the type of thing that they should do as a regular basis. So I think if you kind of take those two things together, I think the court should be very reluctant to suggest that federal common law on its own and completely preempt all state laws and open up federal jurisdiction in a particular case until we've been told explicitly. But if we understand the district's complaint here to really be focusing on public, right, because a lot of this is about, you know, fossil fuel use, you know, is causing global climate change. People have made choices based on these representations rather than choose alternatives in a lot of these claims arguably go to some kind of public harm. It's not just harming the consumers who chose to, you know, buy a, you know, a regular car instead of an electric car or something like that. Right. It's a public harm from this. That's that's fair. Fair enough, Judge Rao. Obviously, I sort of think that starts to sound like a federal common law of nuisance or something like that, where there are these broader public harms. It's not really about individual consumers. I understand that, but my response is simply that the way that the reason that is not going to be a problem in these types of cases is because you can argue Clean Air Act preemption. And I do think the Clean Air Act is pretty broad. I don't think it covers a consumer deception case like this, but it certainly does preempt some state laws in this area. And so, you know, they could have also made a complete preempt an argument about the Clean Air Act, but they haven't. I think probably because it isn't going to cover a claim like this as well. But I don't think the court should be too worried about this notion that you'll have a lot of state law claims that are kind of moving into the realm of what the federal government has decided are the parameters for emissions and production of these types of fuels. Because you have the Clean Air Act at the end of the day that preempts many of those claims and there's always an argument. So, you know, I just don't it's not clear to me you need the federal common law to sort of come in and do some work that the Clean Air Act isn't. And in fact, this report has said in AEP that the federal common law to come in so so that there is a federal forum for these claims. No, simply because we see this claim as a purely state law claim that and we really at the end of the day, I think that this consumer deception claim is really far, far afield from any type of claim that's seeking to regulate production or emission. We actually have absolutely no quarrel, nor do we think that this claim will in any way affect their ability to produce oil and gas. We have no quarrel in this litigation with their emitting greenhouse gases. We don't even have a quarrel with them marketing their products in the District of Columbia as long as they comply with the CPPA and don't market their products in a deceptive or misleading way. That is our only quarrel in this case. And we think that that really distinguishes this case even from the courts of appeals that have gone in our favor. The other courts of appeals that have gone in our favor on this removal question. We see this case is actually being quite a bit easier than even those cases because many of those cases did bring public nuisance claims for that that are sort of going after the damages as a result of climate change. Does federal law have a different role in displacing D.C. law as opposed to the law of the state? I don't think so. So the reason is simply that we have some circuit cases saying that, but well, I just say in this particular area, obviously, the Home Rule Act provides the D.C. lawmaking authority, the mayor with lawmaking authority. We've promulgated a Consumer Protection Procedures Act that does not allow deceptive marketing in the district, just like every other state does. Obviously, there's one additional hurdle in the district, which is that any law that we pass can be vetoed by Congress. And so there is sort of that layer. But once you get past that and the law is enshrined in the D.C. code, it's not clear. It's just that all of the authority that the District of Columbia has comes from the federal government, which, of course, is not true of the 50 states, which have their own sovereign lawmaking authority. That's right. But our local D.C. courts are treated as state courts for purposes of removal of jurisdiction. So it's not clear to me that removal, the removal doctrine should act any differently for the district as opposed to other states, even if there are other distinctions. I'm happy to address Grable or the federal officer doctrine or Oxlade if the court has any questions on those. I think we understand. Otherwise, we'd ask the court to affirm. Thank you. Are you satisfied with the narrowing? I would make a couple of points, starting with the narrowing. First, with regard to the narrowing, Mr. For the first time and before this court certainly takes the position that the district is no longer seeking damages for the physical effects of climate change or overuse attributed to climate change. But I think it was telling that when Judge and as well, what relief are you affirmatively seeking here that the relief was much more open ended? It went beyond merely seeking compensation for consumers who would not have otherwise purchased fossil fuels, but for the alleged misrepresentation. For instance, you referred to a compensation for clean energy competitors who might have had an advantage, but for the misrepresentation, he suggested that the injunctive relief goes beyond merely enjoining the defendants for making the statements at issue. And he said nothing about the restitution that's being sought or the civil penalties that are being sought civil penalties that can amount to ten thousand dollars, probably in the district's view for every sale of gasoline that took place over the course of many decades. And so the relief, I think, remains quite broad here and certainly broader than the more traditional relief that would be sought in a paradigmatic consumer protection. Mr. I thought that your argument does not hinge on the breadth of the release of the relief, but instead that the relief needs to be targeted at global climate change. Well, I think that to the extent that the claim here is for relief that relates to injuries related to global climate change, that these broader forms of relief again are relief that I think could fairly be characterized as precisely that. In other words, it goes they need not be, though, because all of the examples you just gave can be targeted towards the misrepresentations. I think I think the cleanest, the clearest example of relief that seems broader is the relief to these clean energy companies that Mr. Fodtok explicitly referred to. But I think once again, I thought, yeah, why? It seems to me that. The premise of that is that based on the false statements that your clients allegedly made, people. Continue to rely on fossil fuels instead of clean energy, but I think that's really targeted to false statements and not to. But again, I think that that is relief that doesn't go directly to consumers, and again, Mr. Fodtok said nothing about the restitutionary relief that is being sought here. And so I think that this disavowal is not really a complete disavowal because the relief that is being sought is broader than the traditional form of relief to consumers who would not have otherwise purchased. And I think the same is true with regard to the injunctive relief that's being sought here. Now, I do want to say just one quick thing in a conventional. Broad case should know this, I can't think of it off the top of my head, can a competitor. Bring a claim for lost sales, right? The defendant commits fraud, which causes consumers to buy the defendant's product rather than. I mean, that seems. Conventional to me. I think that there might be some cause to action under that circumstance, but I think my submission is simply that that is not a traditional consumer protection form of remedy. And that that is, again, an example of the fact that would be a question about the scope of the state cause of action just doesn't feel to me like. A question that's necessarily going to start and to entrench federal interests and to be clear on all of these issues, we would certainly advance arguments that these remedies are not appropriate remedies under the CPPA. But I also think that it illustrates that again, the district is reluctant. I would submit. To to seek what are the sort of conventional remedies in a consumer protection case? And at bottom, I think this case is really no different from the Minnesota case or the other cases where. Plaintiffs have sought relief in consumer protection cases characterized as relief from misrepresentations that sweeps much more broadly. And I can do no better than what Josh Ross said in his opinion, incurring in the circuits decision that while Minnesota and that case purports to bring state law consumer protection claims. It's lawsuit takes aim at the production and sale of fossil fuels worldwide. And so while it does seem as if the district is to some extent, backing away from the most ambitious characterization of what it sought. One might well wonder why the district didn't do that in its brief. I think that the district has not backed away from it far enough in order for federal common law not to apply. I think the 1 thing I would say on the merits with the court's lead is that on this issue of. The characterization of the 2nd, circuit's decision in city of New York, I would point the court in particular to the discussion pages 98 to 99, where judge Sullivan said, and I'm quoting state law does not suddenly become presumptively competent to address issues. The demand a unified federal standard simply because Congress saw fit to displace a federal court made standard with the legislative 1. such an outcome is too strange to seriously contemplate. So, it says that in the context of his ultimate ruling, which is that the clean air act, just just as federal common law. Sprang to life on its own and preempted. Before displaced completely cramped, it gave you a cause of action before the clean air act now the clean air. Yeah, to be sure, but I think that that last conclusion doesn't get you where you need to be. But I think that that reasoning applies with equal force with regard to the jurisdictional analysis for the simple reason that. It would be anomalous to say that in a context where federal common law applies. Precisely because of the operation of the constitutional scheme. Displacement by a federal statute would somehow give state law new life for purposes of the jurisdictional inquiry. So, I would display, I mean, we're going around in circles. Displacement means it doesn't. Displacement in our view means that there is no valid cause of action and I would certainly recognize that. This last aspect is the 1 aspect of this on which the Supreme Court has not spoken. But again, I think that it would be anomalous to treat a situation in which federal common law supplies, the rule of action decision. Differently from a situation, which a federal statute does that and I would point I said, right? Miller in my excitement. It was really hard to answer. I looked at it. I apologize. I apologize to professors, right? And Miller for attributing that to them. But I think that the reasoning applies with equal force here, and I don't think that the Supreme Court's decisions can be read to recognize that there's no room for federal common law to supply the cause to supply the rule of decision for jurisdictional purposes. Thanks to both counsel for your very skillful and vigorous arguments. The case is submitted.
judges: Katsas, Rao, Pan